Argued September 7; reversed October 10; rehearing denied
November 9, 1933

# HARTLEY *v.* BERG

(25 P. (2d) 932)

*W. H. Maguire,* of Portland (Dey, Hampson & Nelson, of Portland, and Giles & Boesen, of Marshfield, on the brief), for appellant.

*Dal M. King,* of Myrtle Point, and *Joseph A. McKeown,* of Marshfield (L. A. Liljeqvist, of Marshfield, on the brief), for respondent.

KELLY, J. Shortly after midnight on the 24th day of May, 1931, defendant was driving his new Chevrolet coupe toward Myrtle Point along the Roseburg-Coos Bay public highway, in Coos county, Oregon, between Bridge and Myrtle Point. In the front seat, besides defendant, there were two young women and a young man. Plaintiff and two other young men were riding in the rumble seat. At a point about a mile from Bridge the car left the highway, went through a fence down the hillside about twenty-five feet and overturned. One of the young men in the rumble seat was killed and plaintiff sustained fractures of the sacrum, pelvis and two vertebrae, namely, the twelfth dorsal and first lumbar, causing paralysis from his hips down.

In his complaint, plaintiff alleges gross negligence on the part of defendant as follows:

(1) That defendant was operating his automobile while under the influence of intoxicating liquor and while intoxicated.

(2) That defendant was operating said automobile with four persons in the driver's seat and while the control of said vehicle was incumbered and interfered with.

(3) "That at said time said highway from Bridge, Coos county, Oregon, to the place where said wreck occurred, was a mountain highway and was a smooth,

oiled rock road in good condition and of sufficient width to allow cars to pass at all points; that said road is almost straight for one hundred yards immediately east of the place of said wreck. That, at the time, there was a large state highway warning sign on the right hand side of said road near the eastern end of the curve and easterly of the place where the wreck occurred and in plain view for a distance of 100 yards, warning motorists and this defendant to slow down. That said defendant, * * * then and there carelessly, negligently and by his gross negligence, disregarding said sign and safety warning, and carelessly, negligently and by his gross negligence, failing to slow said car or to apply the brakes thereon did then and there carelessly, negligently and by his gross negligence * * * and in reckless disregard of the rights of others and of his passengers and particularly this plaintiff, did drive said motor vehicle to the left side of said highway and along the left half thereof, and so as aforesaid continued to drive said motor vehicle for a distance of approximately seventy-five feet along the left half of said highway and the traveled portion thereof, and did * * * cause said motor vehicle to leave said highway upon the left side thereof and go over a steep bank thereof and to upset and overturn.''

By consent of plaintiff, before the case was submitted to the jury, the second charge of negligence was withdrawn.

Eleven assignments of error are set forth in defendant's brief. Eight of these are based upon the giving of certain instructions and the failure to give instructions requested by defendant. One of them is based upon the failure of the court to submit interrogatories

in the form of a special verdict as requested by defendant; and also upon the submission of interrogatories somewhat similar thereto.

In the matter of the failure to submit the form of special verdict requested by defendant, the trial court did not abuse its discretion, nor did it do so in submitting the special verdict which the jury returned. It would unduly prolong this opinion to discuss these assignments of error and the authorities cited thereon.

There are three grounds for urging that, as a matter of law, plaintiff cannot recover.

First. It is claimed that there is no direct evidence of any specific act of negligence on defendant's part.

Second. It is further claimed that by contributing to the purchase price and otherwise participating in the procurement of liquor, part of which defendant drank, plaintiff was guilty of negligence which caused his injury.

Third. By assuming the place of an occupant in defendant's car with knowledge that defendant had been drinking, plaintiff was contributorily negligent.

■ The defendant, himself, testified that he could not remember any of the evening's events after leaving Myrtle Point at about 9 p. m. of the 23rd. A physician testified that defendant said to him that he, defendant, looked down at the speedometer just before the accident and thereupon the accident immediately occurred. The other occupants of defendant's car furnished no more specific statement than that.

The tracks of the car disclosed and witnesses, who were a little distance behind defendant on the highway, testified that defendant crossed from his right side of the road to the left, drove about fifty feet on his left side where there was no obstruction or other in-

tervening object requiring him to do so, and then went off the grade down about twenty-five feet after breakthrough a fence, thereby causing the car to overturn. It is also undisputed that defendant drove past a sign with the word "slow" upon it, which, by looking, he could have seen. There is some evidence tending to show that the brakes were not applied.

There is also evidence to the effect that the brakes were in good repair, and that the car was a new car and generally in good condition. The question is whether from these facts and circumstances an inference of gross negligence may be drawn. We think that such an inference is deducible, not as a presumption of law for the court, but, as an inference of fact for the jury.

Speaking through Mr. Justice ROSSMAN, this court has given a very clear definition of gross negligence. We quote:

"Thus, gross negligence is conduct which indicates an indifference to the probable consequences of the act. A motor host who drives in a manner which indicates that he has no concern for consequences and an indifference to the rights of others is said to be guilty of gross negligence. The injury which he inflicts is not entirely inadvertent. His mental qualities, therefore, differ from those of another who is guilty of only ordinary negligence. The condition of mind of the driver who plunges on ahead, grossly negligent of the rights of others, may not be such that we can say that his tortious acts are wilful or wanton, but his mind is at least indifferent to the rights of others or displays those rash qualities exhibited by the foolhardy". Rauch v. Stecklein, 142 Or. 286 (20 P. (2d) 387).

In the case at bar, the mountain road with a deep canyon to the defendant's left and the highway sign

of warning given by the word "slow" proclaimed danger. As well said in the opinion from which we have just quoted:

"It is unnecessary that the warning of disaster should be express. If the circumstances are such that the motorist, in the exercise of slight diligence should have observed the impending danger (Adair v. Newkirk, supra), he becomes charged with knowledge of all that the circumstances impart". Rauch v. Stecklein, supra.

In *Silver v. Silver,* 108 Conn. 371 (143 Atl. 240, 65 A. L. R. 943), the court were of the opinion that the accident occurred by the driver momentarily turning to look toward the right at the instance of his child who called to him to look at some horses which were being ridden in a vacant lot on the right side of the road. This was held to be negligence, but not gross negligence.

In *Saxe v. Terry,* 140 Wash. 503 (250 P. 27), the driver failed to make a turn at the rate of approximately twenty-five miles per hour due to gravel or small pebbles upon the highway.

In *Bank v. Satran,* 266 Mass. 253 (165 N. E. 117), the rate of speed was twenty miles, a slight snow was falling and the car, which was a big closed car, was being driven around a corner. It skidded and brought up against a motor omnibus.

In *Craig v. McAtee,* 160 Wash. 337 (295 P. 146), the speed was not less than twenty-five miles per hour, the driver took her right hand off the wheel and felt in her lap for her handbag, being a little startled that it was not there, she took her eyes off the road to look for it. She found that it had slipped from her lap and was

on her right-hand side. She put her hand upon the handbag, immediately thereafter the crash occurred; that the time the driver had her eyes off the road was two or three times longer than it would have taken her to look down on an object and look back on the road. The car ran against a telephone pole.

In *Marcienowski v. Sanders,* 252 Mass. 65 (147 N. E. 275), the parties were hurrying to a fire, the car swayed to the left and the left part of the machine struck a telephone pole.

In each of these cases independent intervening causes, not indicative of such indifference to the rights of others as to constitute gross negligence, seems to be the proximate cause. In one case, it was the cry of a child, in another, gravel upon the highway, in another, the skidding of the car in a light snow storm, in still another, the misplacement of a handbag and in the case last cited, the commendable effort to reach the scene of a fire without unnecessary delay. The case at bar presents no such feature.

■ However much we may disapprove the use of intoxicants by those who operate automobiles, there is no statute, of which we are aware, depriving one of his right to recover for personal injuries caused by the negligence of a driver merely because the injured person had theretofore given such a driver a drink or drinks of such liquor. If the liquor furnished by the plaintiff caused the accident or contributed as a proximate concurring cause thereof, plaintiff ought not to recover. This, however, presents a question of fact, namely, was the liquor, which plaintiff helped to procure, the independent cause or a concurring proximate cause of his injury. That question was submitted to

the jury. It is not a question which, in the state of this record, the circuit court could have treated as a question of law.

The record discloses that from some source other than plaintiff, before defendant and plaintiff left Myrtle Point early in the evening of the 23d of May, 1931, defendant had procured three pint bottles of beer the contents of which were drunk by defendant, plaintiff and two other young men. It also discloses that as these young men left Myrtle Point on their way to Bridge to attend a dance, a half gallon of whiskey was procured by plaintiff and the two young men; that defendant did not contribute any money toward its purchase price, but plaintiff did. That before 9 or 9:30 p. m. defendant drank at least three times from this half-gallon supply. The testimony then discloses that on at least two occasions after 9:30 p. m in the absence of plaintiff and without plaintiff's knowledge, defendant drank some whiskey and that defendant displayed a pint flask partially filled with whiskey which he had upon his person. We know no rule of law which enables us to say whether the first drinks or the last drinks caused intoxication, or whether all of them together did so. The jury found by its special verdict that defendant was not intoxicated. We think that it was purely a question of fact and not one of law.

This case is easily distinguishable from *Franco v. Vakares*, 35 Ariz. 309 (277 P. 812). There, the plaintiff's decedent supplied all of the liquor which defendant drank, and sat in the laps of two other occupants of the car by the side of defendant where he saw or could have seen the traffic, the highway and the conduct of defendant in operating the car. The appellate court were convinced that plaintiff's decedent caused de-

fendant's inebriety. In that case, the defendant, the decedent and their two companions were merely joy riding on the well-lighted streets of the city of Tucson, Arizona. They were racing with other cars and singing. In the case at bar, all of the testimony is to the effect that there was nothing in defendant's appearance or conduct to indicate that he was drunk, that the speed of the car was not above thirty or thirty-five miles per hour; that there was no boisterous conduct on the part of any of the occupants of the car and in fact one of the occupants had gone to sleep. Besides, plaintiff could not observe from the rumble seat just what course the car was taking with regard to the traveled portion of the highway.

We are heartily in accord with the weight of authority to the effect that a guest who rides in an automobile knowing that the driver is intoxicated is guilty of such contributory negligence as to preclude recovery for any injury sustained by reason of such intoxication. There are two questions of fact involved in that proposition. The first is, that the driver is intoxicated. In the case at bar upon that point, the jury decided that the driver was not intoxicated. At most, the testimony is susceptible of conflicting constructions thereon. The second is, that plaintiff knew or ought to have known of such intoxication. If the jury was right in upholding the contention strongly urged in behalf of defendant, namely, that defendant was not intoxicated, then, manifestly, plaintiff could not be apprised of the nonexistent fact of defendant's alleged intoxication. If the jury and defendant were both wrong, still, it remains a question of fact as to whether plaintiff knew or ought to have known that defendant was drunk. Upon these questions of fact, the jury found against defendant.

■ The trial court instructed the jury as follows:

"You are instructed that it was the duty under the rules of the road for the defendant Harold Berg while driving the automobile to drive the same upon the right half of the highway. The undisputed evidence in the case shows he did not do so and you are instructed that by failing to drive upon the right half of the highway by driving on the left half of the highway, the defendant Berg was guilty of negligence as a matter of law."

"If you find in this case that the highway at the place where the accident occurred was a mountain highway, then the law would require that defendant drive as near to the right hand side of such highway, if it was such highway, as is reasonably possible and a failure to do so would be neglicence as a matter of law."

In doing so, the court thrice stated to the jury that failing to drive upon the right half of the highway constitutes negligence as a matter of law. In this the court erred.

As was said by Mr. Justice ROSSMAN in *Weinstein v. Wheeler,* 135 Or. 518, 529 (295 P. 1096):

"Rules of the road similar to ours, which require the operation of automobiles upon the right hand side of the roadway, do not contemplate strict compliance with their provisions except when a car meets and passes another coming from the opposite direction: Clarke v. Woop, 159 App. Div. 437 (144 N. Y. Sup. 595); Hicks v. Morgan, (Tex. Civ. App.) 259 S. W. 263; Ripley v. Wilson, 140 Miss. 845 (105 So. 476); Straten v. Spencer, 52 Cal. App. 98 (197 P. 540); 42 C. J. Motor Vehicles, Sec. 611, p. 902."

The trial court should have submitted the question to the jury as to whether or not defendant's driving upon his left side of the highway constituted negligence.

■ We are reluctant to enter an order of reversal in this case; but we are unable to say that the instructions last quoted were harmless; hence, there is no other alternative.

The judgment of the circuit court is reversed and the cause remanded for further proceedings not inconsistent herewith.

RAND, C. J., BELT and ROSSMAN, JJ., concur.